1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANERAE V. BROWN,                              No.  2:13-cv-2369 DAD P

12              Plaintiff,

13        v.                                       ORDER AND

14   P. MARTINEZ et al.,                           FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18   42 U.S.C. § 1983.  This matter is before the court on a motion to dismiss brought on behalf of

19   defendant Angulo.  Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

20   Plaintiff has also filed an unauthorized response to defendant's reply, which this court – in the

21   interest of justice and in light of plaintiff's pro se status – has reviewed and considered.

22        For the reasons discussed herein, the court finds that plaintiff's complaint fails to state a

23   cognizable claim for relief against defendant Angulo.  Accordingly, the undersigned will

24   recommend that defendant Angulo's motion to dismiss be granted.  The court will also

25   recommend, however, that plaintiff be granted thirty days leave to file a supplemental complaint

26   so that he may attempt to cure the deficiency of his Fourteenth Amendment due process claim.

27   /////

28   /////

                                                 1

**BACKGROUND**

Plaintiff is proceeding on his original complaint against defendants Martinez, Harkness, Fish, Angulo, Kirch, Plainer, Perez, and Foulk.[1]  In his complaint, plaintiff alleges as follows.  In July 2011, defendant Martinez openly displayed an interest in plaintiff and his cellmate inmate O'Reilly.  According to plaintiff, he is a "public interest case inmate" because he is a former recording artist known as "X-Raided."  Defendant Martinez attempted to establish familiarity with him and inmate O'Reilly and eventually developed an inappropriate on-again off-again relationship of a sexual nature with inmate O'Reilly.  (Compl. at 3 & 5.)  Plaintiff introduced inmate O'Reilly to a female associate of his, and the two began corresponding.  Defendant Martinez became jealous and approached Investigative Services Unit ("ISU") Officer Wheeler and told him that inmate O'Reilly implied that he would pay her $12,000.00 to smuggle two iphones into the institution – one for him and one for plaintiff.  ISU Officer Wheeler met with ISU Officer defendant Harkness, at which time they opened an investigation and devised a plan to intercept the money and contraband phones before they entered the institution.  (Compl. at 5-6.)

On January 27, 2012, defendant Harkness completed his investigation into the matter. ISU staff escorted plaintiff and inmate O'Reilly to the program office, read them their <u>Miranda</u> rights, and placed them in administrative segregation.  On February 8, 2012, defendant Fish issued plaintiff a Rules Violation Report ("RVR"), authored by defendant Harkness, charging plaintiff with "Conspiracy to Bribe a Peace Officer."  Plaintiff alleges that the report falsely stated that he wanted defendant Martinez to bring him two iphones with attachable microphones. (Compl. at 15-18, Ex. A(3).)

On March 2, 2012, plaintiff appeared before Senior Hearing Officer defendant Angulo. Plaintiff requested defendant Martinez as a witness, but defendant Fish told defendant Angulo that plaintiff had rescinded that request.  Plaintiff said that he had done no such thing, but

---

[1]  Defendants Harkness, Fish, Kirch, Plainer, Perez, and Foulk are represented by separate counsel in this action.  Defendant Martinez is also represented by separate counsel.  Counsel for defendants Harkness, Fish, Kirch, Plainer, Perez, and Foulk and counsel for defendant Martinez have filed separate motions to dismiss on behalf of their clients.  The court will address all three pending motions to dismiss in this action in separate findings and recommendations.

1    defendant Angulo explained that defendant Martinez was not available and her absence would not

2    prejudice the hearing in any event.  Plaintiff also attempted to give defendant Angulo a written

3    statement, but she refused it and purportedly told plaintiff "It doesn't matter.  I'm going to find

4    you guilty anyway."  (Compl. at 23-24, Ex. D.)

5            Prison officials found both plaintiff and inmate O'Reilly guilty of the conspiracy charge.

6    On March 21, 2012, defendant Perez ordered inmate O'Reilly's RVR reissued and reheard

7    because defendant Angulo had stipulated to witness testimony that was inconsistent with the

8    witness's incident report.  However, defendant Kirch and defendant Plainer reviewed plaintiff's

9    RVR and upheld the guilty finding as to plaintiff.  On April 12, 2012, plaintiff received a six-

10   month SHU term.  Plaintiff administratively appealed his guilty finding and pointed to defendant

11   Perez's memo to defendant Kirch ordering a reissuing and rehearing of inmate O'Reilly's RVR.

12   In plaintiff's view, the only difference between himself and inmate O'Reilly was their skin color

13   and plaintiff's status as a recording artist.  On May 24, 2012, defendant Foulk denied plaintiff's

14   inmate appeal from his disciplinary conviction at the second level of review.  On September 24,

15   2012, prison officials granted plaintiff relief at the third level of review and ordered his RVR

16   reissued and reheard.  On November 20, 2012, Senior Hearing Officer Sisson found plaintiff not

17   guilty and dismissed the RVR.  Ultimately, plaintiff served two months in the SHU.  (Compl. at

18   24-31, Exs. E-I, L, N.)

19           On May 23, 2012, Steven Leese, a Special Agent from Internal Affairs, interviewed

20   plaintiff and stated he was investigating allegations of staff misconduct against defendant

21   Martinez.  Plaintiff explained the entire course of events that had taken place with respect to his

22   RVR.  Special Agent Leese informed him that both Internal Affairs and the Office of the

23   Inspector General were investigating defendant Martinez.  According to plaintiff, as a result of

24   that investigation, the California Department of Corrections and Rehabilitation no longer employs

25   defendant Martinez.  (Compl. at 31.)

26           At screening, the court found that liberally construed plaintiff's complaint appeared to

27   state a cognizable claim against defendants under the Fourteenth Amendment Due Process Clause

28   and Equal Protection Clause.  (Doc. No. 12)

1                                    **ANALYSIS**

2     I.  Motion Pursuant to Rule 12(b)(6)

3            A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

4     tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578,

5     581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based on the lack

6     of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

7     theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  See also

8     Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In order to survive

9     dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of

10    the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to

11    relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

12           In determining whether a pleading states a claim, the court accepts as true all material

13    allegations in the complaint and construes those allegations, as well as the reasonable inferences

14    that can be drawn from them, in the light most favorable to the plaintiff.  Hishon v. King &

15    Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740

16    (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a motion to

17    dismiss, the court also resolves doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S.

18    411, 421 (1969).  However, the court need not accept as true conclusory allegations, unreasonable

19    inferences, or unwarranted deductions of fact.  W. Mining Council v. Watt, 643 F.2d 618, 624

20    (9th Cir. 1981).

21           In general, pro se pleadings are held to a less stringent standard than those drafted by

22    lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

23    such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

24    However, the court's liberal interpretation of a pro se complaint may not supply essential

25    elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

26    266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

27    /////

28    /////

4

II. Discussion

In the pending motion to dismiss, counsel for defendant Angulo argues that plaintiff has failed to plead sufficient facts to state a cognizable claim for relief against Angulo under the Fourteenth Amendment Due Process Clause or Equal Protection Clause. (Def.'s Mot. to Dismiss (Doc. No. 22) at 4-10.)  Upon further review of plaintiff's complaint, and for the reasons set forth below, the court finds that argument to be persuasive.

As to plaintiff's due process claim against defendant Angulo, the Supreme Court has held that the procedural protections guaranteed by the Fourteenth Amendment Due Process Clause only apply when a constitutionally protected liberty or property interest is at stake.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); see also Marsh v. County of San Diego, 680 F.3d 1148, 1155 (9th Cir. 2012); Brittain v. Hansen, 451 F.3d 982, 999-1000 (9th Cir. 2006).  The Due Process Clause itself does not give prisoners a liberty interest in avoiding transfer to more adverse conditions of confinement.  See Meachum v. Fano, 427 U.S. 215, 225 (1976).  However, states may create liberty interests which are protected by the Due Process Clause.  These circumstances generally involve a change in condition of confinement that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Connor, 515 U.S. 472, 484 (1995).

In Sandin, the Supreme Court held that a prisoner's thirty-day disciplinary segregated confinement did not implicate a liberty interest because it did not present a "dramatic departure" from the basic conditions of the prisoner's indeterminate sentence.  Sandin, 515 U.S. at 485.  In so holding, the Court explained that the prisoner's segregated confinement, with insignificant exceptions, was essentially the same as the conditions imposed on inmates in administrative segregation.  See id. at 486.  In addition, the Court explained that the state had ultimately expunged the prisoner's disciplinary record of the more serious charge, and the prisoner had not suffered a "major disruption in his environment" both in terms of duration and degree of restriction.  See id.  Finally, the Court explained that the state's actions in the case would not affect the duration of plaintiff's sentence.  See id. at 487.

/////

5

1   In this case, plaintiff claims that defendant Angulo did not provide him with a fair hearing

2   in connection with his RVR by refusing to allow plaintiff to call defendant Martinez as a witness

3   at the hearing and by rejecting his written statement.  (Compl. at 23-24.)  However, plaintiff has

4   not alleged that he had a liberty interest at stake in avoiding his temporary disciplinary

5   segregation in the SHU.  Specifically, plaintiff has not alleged facts describing how his SHU

6   conditions rose to the level of an "atypical and significant hardship" on him.  See Jackson v.

7   Carey, 353 F.3d 750, 755 (9th Cir. 2003) ("Sandin requires a factual comparison between

8   conditions in general population or administrative segregation (whichever is applicable) and

9   disciplinary segregation, examining the hardship caused by the prisoner's challenged action in

10  relation to the basic conditions of life as a prisoner."); Resnick v. Hayes, 213 F.3d 443, 448-49

11  (9th Cir. 2000) (affirming the dismissal of federal prisoner's complaint because he had not

12  alleged a liberty interest in not being held in the SHU pending a disciplinary hearing).  In this

13  regard, plaintiff's temporary disciplinary segregation in the SHU may well have been "within the

14  range of confinement to be normally expected" by prisoners "in relation to the ordinary incidents

15  of prison life." Sandin, 415 U.S. at 486-87.  See also Jackson, 353 F.3d at 755 ("What less

16  egregious condition or combination of conditions or factors would meet the test requires case by

17  case, fact by fact consideration.").

18      Unless there is a protected liberty interest at stake, the court need not reach question of

19  what process plaintiff was due.  See Wilkinson, 545 U.S. at 221 ("We need reach the question of

20  what process is due only if the inmates establish a constitutionally protected liberty interest ….").

21  Accordingly, the undersigned will recommend that plaintiff's due process claim against defendant

22  Angulo be dismissed.  However, where, as here, plaintiff may be able to cure the deficiency of his

23  complaint, the undersigned will also recommend that plaintiff be granted leave to file a

24  supplemental complaint.  In any supplemental complaint plaintiff elects to file, he will need to

25  allege facts that, if proven, would demonstrate that his alleged deprivation (i.e., his temporary

26  /////

27  /////

28  /////

6

1   disciplinary segregation in the SHU) resulted in him suffering an "atypical and significant

2   hardship" that might have conceivably created a liberty interest.[2]

3         Turning now to plaintiff's equal protection claim, the Supreme Court has held that the

4   Equal Protection Clause "is essentially a direction that all persons similarly situated should be

5   treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

6   "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from

7   invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  To

8   state a cognizable claim under the Equal Protection Clause, a prisoner "must plead intentional

9   unlawful discrimination or allege facts that are at least susceptible of an inference of

10  discriminatory intent." Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th

11  Cir. 1998).  "Intentional discrimination means that a defendant acted at least in part *because of* a

12  plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in

13  original) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

14        In this case, as noted above, plaintiff claims that defendant Angulo did not provide him

15  with a fair hearing in connection with his RVR.  (Compl. at 23-24.)  However, plaintiff has not

16  alleged any facts in connection with that claim indicating that defendant Angulo intentionally

17  discriminated against him based on his race.  In fact, in his complaint, plaintiff makes clear that

18  defendant Angulo was the hearing officer in both plaintiff and innate O'Reilly's proceedings, that

19  defendant Angulo denied both of their requests to call defendant Martinez as a witness, and that

20  defendant Angulo found both plaintiff and inmate O'Reilly guilty of the conspiracy disciplinary

21  charge.  (Id. at 24)  In his opposition to defendant Martinez's pending motion to dismiss, plaintiff

22  _____

23  [2]  Given the lengthy and detailed nature of plaintiff's original complaint, the undersigned is
    recommending that plaintiff be granted leave to file a supplemental complaint rather than an
24  amended complaint (that is complete in and of itself).  In any supplemental complaint, plaintiff
    does not need to repeat the allegations already set forth in his original complaint.  He need only
25  allege additional facts specifying how his alleged deprivation constituted an atypical and
    significant hardship on him in relation to the ordinary incidents of prison life.  The court notes
26  that it has issued separate findings and recommendations reaching the same conclusion with
    respect to plaintiff's due process claims against defendants Harkness, Fish, Perez, Kirch, Plainer,
27  and Foulk.  If the assigned district judge adopts both of the undersigned's findings and
    recommendations on plaintiff's due process claims, plaintiff need only file one supplemental
28  complaint containing only the relevant new allegations against all remaining defendants.

1    confirms how similarly situated and treated he and inmate O'Reilly were.  In this regard, plaintiff

2    stated in that opposition as follows:

3              They were both placed in ASU for Conspiracy to Bribe a Peace
               Officer; they were issued identical RVRs; they were assigned the
4              same Investigative Employee (Fish); they were issued identical
               Incident Reports; they had the same hearing officer; they had their
5              respective hearings on the same day; the hearing officer alleged that
               they both had rescinded their initial requests for Martinez to appear
6              at the hearing; the hearing officer attempted to intimidate them both
               into rescinding their requests for Martinez to be present at the
7              hearing; they were both denied the right to call Martinez as a
               witness; the hearing officer stipulated to Martinez's witness
8              testimony at both of their hearings, specifically that they both "did
               not have a conversation with her"; and they were both found guilty.
9

10   (Pl.'s Opp'n to Def. Martinez's Mot. to Dismiss at 10.)

11          According to plaintiff, he received identical treatment to inmate O'Reilly up until prison

12   officials reviewed their guilty findings on the disciplinary charges brought against them, which

13   took place after defendant Angulo's involvement as their Senior Hearing Officer had concluded.

14   (Compl. at 25.)  Plaintiff has not alleged that defendant Angulo treated him differently from

15   inmate O'Reilly on the basis of his race for purposes of an equal protection claim.  Accordingly,

16   the undersigned will recommend that plaintiff's equal protection claim against defendant Angulo

17   be dismissed for failure to state a cognizable claim for relief.  In addition, where, as here with

18   respect to the equal protection claim, it is clear that the complaint suffers from pleading

19   deficiencies that cannot be cured by amendment dismissal without leave to amend is appropriate.

20   See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (there is no need to

21   prolong the litigation by permitting further amendment where the "basic flaw" in the underlying

22   facts as alleged cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027,

23   1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the

24   litigation by permitting further amendment.").

25          Finally, the court notes that plaintiff has argued in his opposition papers that defendant

26   Angulo retaliated against him when she denied him a fair hearing on his RVR because he had

27   reported defendant Martinez to the proper authorities.  Plaintiff is advised that an opposition to a

28   motion to dismiss is not an appropriate place to raise and argue new claims.  See Schneider v.

                                                    8

1    Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained

2    in the inmates' opposition motion, however, are irrelevant for Rule 12(b)(6) purposes.").  When

3    this court screened plaintiff's original complaint, it found that the complaint appeared to state a

4    cognizable claim against defendants under the Fourteenth Amendment Due Process Clause and

5    Equal Protection Clause.  (Doc. No. 12)  Plaintiff did not file a motion for reconsideration of that

6    order nor did he move to amend his complaint at that time.

7           Moreover, the court has reviewed plaintiff's complaint in connection with defendant's

8    pending motion to dismiss, and he has not set forth any non-conclusory allegations in support of a

9    First Amendment retaliation claim against defendant Angulo therein.  See Huskey v. City of San

10   Jose, 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on the logical fallacy of

11   post hoc, ergo propter hoc, literally, "after this, therefore because of this.").  Specifically, plaintiff

12   has not alleged the crucial causal link between him reporting defendant Martinez to the proper

13   authorities and defendant Angulo's alleged misconduct during his RVR hearing.  See Rhodes v.

14   Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  At most, in his opposition to defendant's

15   pending motion to dismiss, plaintiff merely speculates that defendant Angulo retaliated against

16   him because of his allegations against defendant Martinez.

17          In sum, plaintiff's complaint fails to state a cognizable claim for relief under the

18   Fourteenth Amendment Due Process Clause or Equal Protection Clause.  Accordingly, the court

19   will recommend that defendant's motion to dismiss be granted.  However, because plaintiff may

20   be able to cure the deficiency of his complaint with respect to his due process

21   claim, the court will recommend that plaintiff be granted thirty days leave to file a supplemental

22   complaint to allege facts that, if proven, would demonstrate that he had a liberty interest in

23   avoiding his temporary disciplinary segregation in the SHU.[3]

24   /////

25   /////

26   _____

[3]   In light of the findings and recommendations herein, the court declines to address defendant
27   Angulo's alternative arguments that plaintiff received all the process he was due and that
     defendant is entitled to qualified immunity.  Defendant Angulo may renew such arguments in a
28   response to plaintiff's supplemental complaint if appropriate.

**CONCLUSION**

IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a United States District Judge to this action.

IT IS HEREBY RECOMMENDED that:

1. Defendant Angulo's motion to dismiss (Doc. No. 22) be granted; and

2. Plaintiff be granted thirty days leave from the date of any order adopting these findings and recommendations to file a supplemental complaint for the limited purpose of curing the deficiency of his due process claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 7, 2015

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
brow2369.57angulo

10